PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:11-cr-00433 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JASON JUREK, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |

Before the Court is Defendant Jason Jurek's Motion to Suppress the fruits of the search of

his residence (ECF No. 23) because the search resulted from an earlier unauthorized search of his

private computer.  The matter has been fully briefed and a hearing on the motion to suppress was

held on January 23, 2012.

For the reasons below, Defendant's motion is denied.

## I.  Background

On August 9, 2011, a Premise Technician employed by AT&T (at times referred to as

"AT&T technician" or "technician")  responded to a service call at Defendant's home in

Chesterland, Ohio.  The service call was to correct problems with an AT&T service, *i.e.* U-Verse,

at Defendant's residence.  Upon arriving, the AT&T technician was greeted at the door by

Defendant's twenty-something year-old son who invited the technician inside and explained that

U-Verse[1] was not properly working.

The son took the AT&T technician to a bedroom closet where Defendant's computer and

---

[1]  U-Verse is a service offered by AT&T that bundles phone, Internet, and digital
television service in one package.

(1:11-cr-00433)

the Internet gateway (the modem for the U-Verse service) were located. The son handed the

AT&T technician a phone and stated that his father, who was not home at the time, wanted to

speak to the technician. There is no dispute that Defendant is the father and the person with

whom the AT&T technician spoke with *via* cell phone.

During the cell phone conversation, Defendant told the AT&T technician that several

other service technicians had attempted to fix the problem and all had been unsuccessful. The

technician replied that he had just arrived and assured Defendant that he would solve the

problem. ECF No. 1-1 at 5-7.

During the suppression hearing on this matter, the AT&T technician testified that during

the telephone conversation, Defendant urged him to fix the problem. And, while it is not usually

necessary to access the customer's computer to verify that needed repair work had been correctly

completed, the laptop computer the AT&T technician had with him was not working properly.[2]

Therefore, his only recourse was to use Defendant's computer to make ensure the service, as

repaired, was working properly.

While using Defendant's computer, the AT&T technician observed a list of the

previously visited websites, including websites that appeared to be pornographic. One such site

had the word "Lolita"–the Spanish word for little girls–in its title. ECF No. 1-1 at 8-9.

After observing the website with the word, "Lolita" in its title, the technician closed the

web browser and clicked on the start button–a step, the technician admitted, was not necessary to

---

[2] The technician testified that the ethernet connection that would enable him to connect
to the gateway or modem was broken, otherwise, his own laptop was usable.

2

(1:11-cr-00433)

ensure that the gateway was working properly.  After clicking on the start button, the technician

noticed a picture and, after clicking on the picture folder, observed what appeared to be both

adult and child pornography.  *See* ECF No. 1-1 at 10.  After viewing these apparently

pornographic images, the technician left Defendant's home and reported what he had observed to

his manager at AT&T who, after consultation with others at AT&T, notified the local police

department.

 The AT&T technician unequivocally testified, on both direct and cross examinations, that

at no time was he acting on behalf of law enforcement.

 Special Agent Donlin's testimony corroborated the technician's testimony that, when the

technician observed the pornographic images at Defendant's home, the technician was not

working on behalf of law enforcement.  Special Agent Donlin also testified that, although

subpoenas had been issued requesting information about Defendant's computer usage, he had not

alerted local law enforcement of his concerns.  He was also not aware of anyone else having

alerted local law enforcement about the suspicions regarding Defendant's computer usage.

 It is undisputed that, after the AT&T technician had serviced Defendant's home, on

August 22, 2011, Special Agent Donlin, of Homeland Security Investigations, applied for and

received a search warrant for Defendant's home, including computers therein.  During the search,

Agents acting on behalf of Homeland Security seized evidence commensurable with the

observations of the AT&T technician.  ECF No. 16 at 18-19.

## II.  Analysis & Ruling

 The Government concedes that the AT&T technician searched Defendant's computer

(1:11-cr-00433)

while performing a service call.  ECF No. 24 at 5.  It is also undisputed that the AT&T technician

along with those at AT&T to whom he had reported his observations went to the local police

department the following day and reported what he had seen to the police, and later, to Special

Agent Donlin.  *Id*.  It is further undisputed that the Fourth Amendment is inapplicable to a search

conducted by a private individual, that is, a person *not* acting as a government agent. *Id*. (citing

Defendant's Motion to Suppress ECF No. 23 at 4 (citing *U.S. v. Jacobsen*, 466 U.S. 109, 113

(1984)).  The question before the Court is whether the AT&T technician was acting as a

government agent.

 In a motion to suppress, the burden of production and persuasion rests upon the

individual seeking to suppress evidence.  *U.S. v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986); *U.S.

v. Feldman*, 606 F.2d 673, 679 n. 11 (6th Cir. 1979), *cert denied*, 445 U.S. 961 (1980); *U.S. v.

Evans*, 572 F.2d 455, 486 (5th Cir.), *cert. denied*, 431 U.S. 870 (1978).

 In support of his motion, Defendant alleges that (1) he had a reasonable expectation of

privacy in his computer files and that (2) that right of privacy was violated when the AT&T

technician, *acting on behalf of the Government*, accessed Defendant's computer and identified

the evidence that is now being used to prosecute him.  In that same writing, Defendant

appropriately acknowledges that the Fourth Amendment is "wholly inapplicable to a search [and]

seizure, even an unreasonable one, effected by a private individual not acting as an agent of the

Government or with the participation or knowledge of any governmental official."  *U.S. v.

Jacobsen*, 466 U.S. 109, 113 (1984) (internal citations and quotations omitted); ECF No. 23 at 4.

He also accurately recites the test relied upon by reviewing courts to determine whether an

4

(1:11-cr-00433)

individual is acting under direction and with the acquiescence of the government, to wit:

> When determining whether a private citizen has acted as a government agent, the
> question is "whether in light of all the circumstances of the case [the informant]
> must be regarded as having acted as an ' instrument' or agent of the state...."
> *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971).  To trigger Fourth
> Amendment protection under the "instrument of the state," or agency theory, "the
> police must have instigated, encouraged, or participated in the search," and "the
> individual must have engaged in the search with the intent of assisting the police
> in their investigative efforts."  *United States v. Lambert*, 771 F.2d 83, 89 (6th
> Cir.1985). With respect to the intent portion of the test, the Sixth Circuit has held
> that a private individual does not act as a government agent where "the intent of
> the private party conducting the search is entirely independent of the government's
> intent to collect evidence for use in a criminal prosecution."  *United States v.
> Howard*, 752 F.2d 220, 227 (6th Cir.), vacated on other grounds, 770 F.2d 57 (6th
> Cir.1985).

ECF No. 23 at 5.

> Defendant summarizes his overall objection to the search in the following way:

> Based upon the lack of information concerning the government's actions during
> the pendency of the investigation, it is unclear whether any actions taken by the
> AT&T Technician were directed or suggested by a government actor.  In addition,
> the extensive details reflected in the ROI of SA Donlin from the interview of
> Technician Finlaw indicates that extensive notes and conclusions were made by
> the Technician, which were very detailed and extensive, and included
> approximate ages, the presence of pubic hair, the presence of semen, and
> estimates of age.  These details appear to reflect prior knowledge, or at least
> training or coaching as to what to record if these images are seen during the
> course of a service call.

ECF No. 23 at 7.

Defendant's concern about the AT&T technician having been acting as an agent of law

enforcement is contradicted by the sworn testimony of the technician and Special Agent Donlin

provided during the suppression hearing.  Additionally, in a sworn affidavit supporting the search

warrant, Special Agent Donlin reiterated, "[i]t is important to note that at no time was Mr. Finlaw

5

(1:11-cr-00433)

acting on behalf of law enforcement." *See* Case No. 1:11MJ9113, ECF No. 1-3 at 17, ¶35.

Additionally, in the affidavit in support of the criminal complaint, Agent Donlin swore, "[i]t is

important to note that at no time was Mr. Finlaw acting on behalf of law enforcement." ECF No.

1-1 at 6, ¶12. Moreover, Agent Donlin testified, under oath, at the preliminary/detention

hearing.[3] During that testimony, Agent Donlin responded affirmatively when asked if whether

(1) he had prepared the affidavit in support of the criminal complaint, (2) if he had an

opportunity to review it, and (3) if he reaffirmed the facts that were contained therein. Agent

Donlin responded "yes" to each of those three questions. ECF No. 16 at 6. Lastly, during the

preliminary/detention hearing Agent Donlin testified that on August 10, 2011 (the day after the

AT&T technician had visited Defendant's home), he "was notified by the Chester Township

Police Department that an AT&T service technician had been to Mr. Jurek's residence on a

complaint of a problem with their Internet." ECF No. 16 at 5. This sworn statement by Agent

Donlin further corroborates the technician's claim not to have had contact with law enforcement

until after the technician had completed his service call at Defendant's residence.

In summary, the Agent Donlin has sworn, on three separate occasions, that the AT&T

Technician was not acting on behalf of law enforcement. Defendant has voiced concerns but has

offered no evidence to the contrary.

The agency theory upon which Defendant relies was sufficiently tested during the

suppression hearing during which the AT&T technician and Special Agent Donlin were cross-

examined. At the conclusion of the suppression hearing, Defense counsel sought and received

---

[3] Conducted on August 26, 2011 by Magistrate Judge Baughman.

6

(1:11-cr-00433)

permission to supplement the record.  *See* Docket Order, January 23, 2012.   After having

receiving no additional evidence or indication that additional evidence would be forthcoming, the

Court notified counsel that the record was closed and the matter ripe for ruling.  *See* Docket

Order, March 7, 2012.

### III.  Conclusion

Based upon the record before the Court, Defendant has not established that the AT&T

technician was acting "on behalf of," "under the direction of," or "at the acquiescence of" law

enforcement when he observed the pornographic images and subsequently reported his

observations to others at AT&T and, ultimately, to local police and Agent Donlin.  Accordingly,

Defendant's Motion to Suppress (ECF No. 23) is denied.


IT IS SO ORDERED.


May 21, 2012_____        _/s/ Benita Y. Pearson_____
Date                          Benita Y. Pearson
                             United States District Judge